# APPEAL OF J. V. THOMPSON ET AL.

[ASSIGNED ESTATE OF WILLIAM BEESON.]

126  467
149  200

126  467
167  563

126  467
178  285

## FROM THE DECREE OF THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

Argued May 17, 1889—Affirmed at Bar.

Under the act of February 17, 1876, P. L. 4, the Court of Common Pleas has power to order the sale, discharged of liens, of real estate assigned, and to stay execution levied thereon, whenever such real estate is incumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens, even though the same may have been appraised by the general appraisers at a valuation exceeding the amount of the liens against it.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 451 January Term 1889, Sup. Ct.; court below, No 1 December Term 1888, C. P.

On October 24, 1888, William J. Sherrard entered judgment against William Beeson, on a note with warrant of attorney, for $3,291. This judgment was afterwards assigned to J. V. Thompson, who subsequently assigned $600 of it to John Snider. On November 17th, William Beeson executed an assignment of all his estate, real and personal, to Samuel E. Ewing, in trust for the benefit of creditors. On December 29th, Thompson and Snider caused a fieri facias to be issued on their said judgment and a levy was made thereunder upon a tract of land called the Mt. Braddock farm, part of the assigned estate.

On January 28, 1889, Mr. Ewing, as assignee, filed a petition praying that the writ of fieri facias issued be stayed, and for an order authorizing him to sell all the real estate of the assignor, discharged of liens, under the act of February 17, 1876, P. L. 4. The petition was in the usual form. To said petition Thompson and Snider, as lien creditors by virtue of their said judgment, filed an answer, averring:

" That the principal and most valuable part of said real estate, is that described in paragraph 1 of said petition and known as the Mt. Braddock farm; that the interest of said insolvent in said tract of land was appraised, by the appraisers appointed by this court under the insolvent act, at the sum of $194,053.33⅓; that the liens against said tract of land, entered prior to Nov. 17, 1888, the date of said assignment, do not exceed the sum of ninety thousand dollars, as shown by a certified list of liens hereto attached and made part hereof.

" Respondents further aver that from these and other facts which they can establish, it is not difficult to determine whether said tract of land can be sold for enough to pay all the liens against it, but that said tract of land can be sold for a much larger sum than all the liens against it; and for this reason the court has no power to make an order authorizing the said assignee to sell said tract of land discharged of all liens against it. Respondents, therefore, respectfully ask the court to refuse to grant the order, prayed for in said petition, to sell the interest of the insolvent in the said Mt. Braddock tract of land."

On February 18, 1889, the assignee filed a replication to the above answer, averring:

1. That at the time said assignment was made, neither J. V. Thompson nor John Snider were lien creditors of said Beeson so far as the Mt. Braddock tract of land, the only tract mentioned in said answer, was concerned. John Snider was the holder of a mortgage upon other lands of said insolvent, but the records of said court do not show the said Thompson to have been a creditor at all of the said insolvent, much less a lien creditor. Neither of said parties to said answer, therefore, has any standing in this court which gives them a right to oppose the granting of an order to said assignee to sell the Mt. Braddock tract of land.

2. The appraisement of the real estate of said insolvent was, in the opinion of competent judges, very high, and the interest of said Beeson in the Mt. Braddock tract was appraised at $185.333,33⅓ and not at $194,053.33⅓ as set forth in said answer.

3. Said tract comprises about 1380 acres of land, appraised at $100 per acre for 1000 acres thereof, and $60 per acre for

the remaining 380; and underlying 622 acres thereof is the large seam or nine-foot vein of coal, which was appraised at $250 per acre; it will therefore be seen that the principal interest of said insolvent, according to said appraisement, lies in the value placed upon the coal aforesaid.

4. The interest of said insolvent in the said Mt. Braddock tract is the undivided two thirds thereof, a fact which will of itself depreciate the value of the same.

5. The market for said coal is so limited, and the trade in it and the coke manufactured therefrom has become so centered in the hands of a few wealthy individuals and large companies that it is almost impossible to find any person who will venture to invest his means therein; and the market value of said coal lands is so much in the control of said individuals and companies, that it is difficult to determine whether the said insolvent's property can be sold for enough to pay all the liens against the same. A tract of coal land covering in extent an area equal or greater than said insolvent's interest in the tract aforesaid, was sold within the past month or so at private sale for $150 per acre. Said tract is situated about two miles from Uniontown, and the Beeson tract about six miles therefrom.

6. The liens against the property of said insolvent at the time of his assignment, November 17, 1888, included in addition to the judgments as shown by the list attached to said answer, the following mortgages, viz.: . . . . . making the liens at the date of said assignment amount to about $135,000.

7. The claims against said insolvent, of unsecured creditors, are very large, and will amount, as we have been informed, to about $175,000, and a sale of his property by the sheriff will, we believe, work great detriment and injury to said creditors.

8. The best price can be obtained for said lands by selling them in small tracts, and a sale by the assignee which will not discharge said liens, would realize but little, if anything, and we think it doubtful if a single bid could be gotten.

9. If, as is asserted, there is no doubt but what a sale of said assignor's property will realize more than enough to discharge the liens upon it, then a sale by his assignee, under an order of the court, will work no injury to the lien creditors; while a sale by the assignee, without an order of court, or a sale by the

sheriff on executions will cause serious loss to the unsecured creditors, and we think, therefore, that it is but just and equitable, as well as legal, that an order of sale should be granted said assignee.

The matter was argued on petition, answer and replication, and on March 18, 1889, the court, HAZEN, P. J., 17th judicial district, specially presiding, without opinion filed, entered a decree and order authorizing the sale of the real estate as prayed for, and staying the writ of fieri facias issued upon the judgment of Sherrard, for use of Thompson and Snider, who thereupon took a writ of error to the order staying the execution, and an appeal from the decree granting the order to sell said real estate, assigning said order and decree as error.

*Mr. S. L. Mestrezat* (with him *Mr. Edward Campbell*), for the plaintiffs in error and appellants.

*Mr. S. E. Ewing*, for the defendant in error and appellee.

PER CURIAM:
On the argument at Bar,

Decree and order affirmed.