Edward S. Handy, Jr.'s, Assigned Estate.    Larned & Haas's Appeal.    Philadelphia Trust, Safe Deposit & Ins. Co.'s Appeal.

*Assignment for creditors—Sale—Act of Feb. 17, 1876—Priority of liens— Will.*

Under the act of Feb. 17, 1876, P. L. 4, which provides that "where the assignor is the owner of a number of tracts of land incumbered to such an extent that it is impossible to ascertain definitely whether a sufficient amount can be realized to discharge all the liens," and "which sale or sales, after being confirmed by said court, shall discharge all liens against the real estate so sold . . . . and the proceeds arising therefrom shall be appropriated to liens extinguished by virtue of the sale according to their priority," it is in the interest of justice to all parties that such sales should be upon ascertained rights, not only as to title, but as to destination of the proceeds; and it therefore becomes the duty of the court to ascertain the number and priority of the liens upon the land before the sale, to enable assignees "to make advantageous sales of said real estate."

Where the assignor's estate is a remainder after the termination of his mother's life estate, and consists of an interest in blended realty and personalty, passing under a will; and it appears that the present appraised

value of the personalty and the assessed value of the realty show a small margin in the amount of the assignor's interest over the incumbrances, there is such an element of uncertainty as will give the court jurisdiction to decree a sale under the act.

While the act does not refer to or provide for sales of personalty, yet there is nothing in the statute to prevent the court from making an order of sale of the blended interest in both realty and personalty in one block.

Such a sale may be ordered where the clear equities of the case require it, although it deprives the senior lien creditor of his privilege under the act of April 20, 1846, P. L. 411, of using his lien as equivalent to money in paying his bid at the sale.

*Decedent's estate—Advancement—Loan—Will.*

Testator authorized the trustees under his will "to advance by way of loan" a certain sum to his son when he reached the age of twenty-one years. The son arrived at the stipulated age during his father's lifetime, and the father gave him the money, taking his notes therefor, and by codicils to his will, directed that these notes should bear interest at five per cent, which should be deducted from the income payable to the son from the estate during the widow's life, and at her death the principal should be deducted from his share on final division and distribution. His share in the entire estate was an undivided interest in the real and personal estate blended, until partition should be made by the trustees. *Held*, that the sum received by the son from the father was a loan, and not an advancement.

*Assignment for creditors—Recording—Pledge.*

After the father's death the son made an assignment by deed poll of all his interest in the estate to the trustees named in his father's will to secure the debt which he owed to the estate. *Held*, that such assignment was a pledge by a debtor to his creditor, and it was not void for failure to record it within thirty days.

*Will—Trusts and trustees—Codicil—Spendthrift trust.*

Testator by his will gave the residue of his estate in trust (1) to allow his wife, and after her death his children, to occupy his city and country residences without paying rent; (2) to pay one half of the net rentals and income to his wife, and to divide the other half in equal shares among his four children; (3) upon the death of his wife to pay one fourth of the net income of his estate to each of his daughters during her life to her separate use; (4) upon the death of either daughter to pay three fourths of the principal of her share to her issue if any, or in default of issue then to testator's surviving children, and the other fourth as his said daughter may direct, etc.; (5) when each of his sons attains the age of twenty-one to advance him in their discretion with his wife's consent, twenty thousand dollars; (6) after the death of his wife to pay each of the sons one half of his share as he shall attain the age of twenty-five, and half of the rest or one fourth of his whole share when he attains the age of twenty-eight, and the remaining fourth to hold on a spendthrift trust for the life of the son. By a codicil, testator directed that upon the death of his wife

his trustees should divide his " estate both real and personal into four equal shares and one half share shall be held by my said trustees for each one of my said children upon the trusts and for the same purposes as are set forth in my will, and for no other trust or purpose whatsoever." *Held*, that the codicil did not so change the provisions of the will as to subject the whole shares of the sons to spendthrift trusts.

Argued Jan. 28, 1895. Appeals Nos. 175 and 202, July T., 1894, by Larned & Haas, and by Philadelphia Trust, Safe Deposit & Insurance Co., executor and trustee of Edward S. Handy, deceased, from decree of C. P. No. 4, Phila. Co., June T., 1893, No. 674, on petition by assignee for leave to sell real estate. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Decree modified.

Petition by C. Berkeley Taylor, Esq., assignee for the benefit of creditors of Edward S. Handy, Jr., for the sale of the real estate of the assignor under the provisions of the act of Feb. 17, 1876.

The case was referred to Angelo T. Freedley, Esq., as master, who reported the facts to be as follows :

" 1. On Oct. 2, 1889, Edward S. Handy, Sr., of the city of Philadelphia, the father of the assignor, died, leaving a will and codicils which were duly admitted to probate in Philadelphia county.

" By his will, dated May 27, 1874, the testator devised the residue of his estate to the Philadelphia Trust, etc., Company in trust, inter alia, during the lifetime of his wife, to pay one half the net income to his said wife for life, and one fourth of the other half to his son, Edward S. Handy, Jr. This fourth part was not sufficient to keep down the interest accruing to the testator's estate by reason of money advanced to E. S. Handy, Jr., during the lifetime of the testator, and for which the latter held his son's obligations. As to the principal of his estate, the testator provided that, after the death of his wife, his son, Edward S. Handy, Jr., should be entitled to one fourth of his estate, of which three fourths parts thereof, or three sixteenths of the entire estate of the testator, should be paid by his trustees to his said son, Edward S. Handy, Jr., absolutely upon his attaining the age of twenty-eight years, and the remaining one fourth of one fourth, or one sixteenth of the entire estate should

be held by his said trustees for the benefit of his son, Edward S. Handy, Jr., under a spendthrift son's trust.

"Ulterior contingent limitations, by way of cross remainders, also existed in favor of said E. S. Handy, Jr., in the shares of the testator's estate, devised to his, the said testator's, other children, in the event of the latter dying without issue and without appointments.

"Full power of sale was given to the trustees.

"By his second codicil, dated March 16, 1883, the testator revoked the power of sale conferred upon the trustees in the original will, and directed that after the death of his wife, his trustees should divide his estate, both real and personal, into four equal shares, and that one share should be held in trust for the said E. S. Handy, Jr., upon the trusts and for the purposes set forth in the will, and of this division and allotment a record should be made in the office of the recorder of deeds. And the testator further directed that interest upon any advances which he might have theretofore made or might thereafter make to his sons, which should be shown by notes in the testator's possession, should be deducted from their shares of the income, and on the death of his wife the principal of said advances should be deducted from their respective shares of the testator's estate. And the testator appointed his sons co-trustees with the Philadelphia Trust, etc., Company.

"By his third codicil, dated Nov. 3, 1887, the testator further revoked the power of sale given to the trustees over the real estate in Philadelphia, other than certain farms, and provided that in the case of death of either of his sons prior to division of his estate that such son, so dying, might dispose of an amount of $20,000, being an amount which the testator previously had paid to each son, and for which he held their promissory notes, and that interest should be charged on said obligations at the rate of five per cent per annum.

"The executors of the will were the Philadelphia Trust Company and the testator's widow and two sons. Copy of the said will and codicils is hereto annexed.

"The testator died leaving his widow and two sons and two daughters to survive him.

"E. S. Handy, Jr., at the time of his father's death, was over the age of twenty-eight years, being then thirty-five years of

age. The life tenant, Mrs. R. A. V. Handy is now seventy-one years of age.

"2. The testator at the time of his death held the following obligations of E. S. Handy, Jr., for money paid to the said E. S. Handy, Jr.

"(a) Note dated Jan. 1, 1880, to the order of Edward S. Handy, for $20,000.

"(b) Note dated Aug. 11, 1881, to the order of Edward S. Handy, for $3,546.

"(c) Note dated Nov. 28, 1883, to the order of Edward S. Handy, for $1,200.

"(d) On Dec. 5, 1888, the said testator, by letter of that date to the Philadelphia Trust Company wherein the testator's securities were held, instructed the said company to permit the said E. S. Handy, Jr., to get a certificate for fifty shares of the Philadelphia Trust Company stock from the testator's box, and authorized the Philadelphia Trust Company to hold the same as collateral for any loan they might make thereon. The said E. S. Handy, Jr., thereupon received this stock and pledged the same to the Philadelphia Trust Company as collateral security for the payment of $18,000, which the said company advanced thereon upon the said collateral security and the five notes of the said E. S. Handy, Jr., aggregating $18,000. This amount was subsequently reduced by payments to $16,500.

"3. On April 29, 1893, the executors of E. S. Handy, Sr., redeemed the above-mentioned fifty shares of stock pledged as collateral by E. S. Handy, Jr., by paying to the Philadelphia Trust Company the sum of $17,285.13, being the amount due by the said E. S. Handy, Jr., to the Philadelphia Trust Company, and for which amount the stock was then pledged as collateral. The executors thereupon received the notes of the said E. S. Handy, Jr., with the fifty shares of stock so held as collateral. This collateral thus redeemed was then and is now worth several thousand dollars more than the amount for which it was held as security.

"4. On April 29, 1893, the date of the transaction mentioned in the previous paragraph, the said E. S. Handy, Jr., by deed poll of that date assigned and transfered unto the executors of the estate of Edward S. Handy, Sr., all his right, title and interest in and to the said estate as security for the amount

which he then owed the estate of his deceased father, which amount was recited in the said deed as being $42,031.13. This deed was acknowledged before a notary on May 2, 1893, and recorded at Philadelphia county on March 28, 1894.

" 5. On July 10, 1893, E. S. Handy, Jr., delivered his judgment note to Messrs. Larned & Haas, of the city of Philadelphia, in the sum of $15,000 payable one day after date. On July 11, 1893, judgment was entered upon this obligation, and damages assessed at $16,275 ; a portion of the debt for which this note was given existed prior to April 29, 1893.

" 6. On July 12, 1893, the said E. S. Handy, Jr., executed and delivered a general assignment for the benefit of all his creditors to C. Berkeley Taylor, Esq., which said assignment was recorded the same day in Philadelphia county, in Deed Book T. C., No. 315, p. 331, etc.

" 7. In March, 1894, Larned & Haas issued a writ of execution, and directed the sheriff to levy on and expose to sale on April 2, 1894, the interest of E. S. Handy, Jr., in thirty-five houses which formed part of the estate of his father.

" 8. On March 24, 1894, the assignee for the benefit of creditors of E. S. Handy, Jr., presented his petition to this court under the act of Feb. 17, 1876, P. L. 4. The petition set forth that the personal estate of the assignor was insufficient for the payment of his debts, and that the real estate was incumbered with liens to such an extent as to render it difficult to determine whether the same could be sold for enough to pay all the liens as aforesaid. The petition prayed that the court would make an order permitting him, the assignee, to sell the real estate of E. S. Handy, Jr., under said act and restrain the aforesaid execution issued by Larned & Haas. On March 31, 1894, the court granted the prayer of the petition.

" 9. On April 7, 1894, Larned & Haas presented their petition to this court, praying that the assignee should be forthwith ordered to sell the real estate in the city of Philadelphia in which the assignor had any right, title or interest. On April 14, 1894, this petition was dismissed.

" 10. On April 14, 1894, the assignee, for the benefit of creditors of E. S. Handy, Jr., presented a supplemental petition to this court, setting forth that the real and personal estate in which the assignor was interested under the will of his father

'was blended together in the residuary devise to trustees and the various shares carved out of the whole estate, and that a partition was to be made by the trustees to parties entitled, and that powers of sale as to some portion of the real estate existed, and that the time of such powers varied as to different pieces of real estate, and praying therefore that he might be directed to sell the entire undivided three sixteenths interest of E. S. Handy, Jr., in his father's estate, clear of all charges, debts or incumbrances whatever. This petition was referred to the master with instructions to report thereon in thirty days.

" 11. The personal estate of the testator, E. S. Handy, Sr., in the hands of the trustees of the said estate on April 10, 1894, was valued at $237,481.63.

"The real estate of the said testator in the hands of the said trustees is assessed for taxation at the sum of $108,100."

The master recommended that the assignee should sell the undivided three sixteenths interest of the assignor in his father's estate in a lump sale.

Exceptions to the master's report were overruled, and the court entered the following decree:

" And now this fifteenth day of June, A. D. 1894, this cause coming on to be heard upon the petition of the assignee for the benefit of creditors of E. S. Handy, Jr., for directions to sell, it is ordered and decreed that E. S. Handy, Jr., is inter alia entitled under the will of his father, Edward S. Handy, Sr., to an undivided vested three sixteenths absolute interest in remainder, after the death of Mrs. R. A. V. Handy, now aged 71 years, in the real and personal estate late of the said Edward S. Handy, Sr., and also subject so far as the Digby homestead is concerned to the right of occupancy therein of R. A. V. Handy, Alice Baltzell (formerly Handy) and Virginia S. Handy ; that the assignee for the benefit of creditors of the said E. S. Handy, Jr., shall sell said undivided three sixteenths interest at public auction in the city of Philadelphia after twenty days' prior notice thereof, published in two newspapers in the said city and also in the Legal Intelligencer, which said advertisements shall contain a full statement of the real and personal estate of Edward S. Handy, Sr., of which the said undivided three sixteenths interest forms part; that the purchaser at said sale shall acquire the aforesaid undivided three sixteenths interest in said estate free,

clear and discharged of and from all liens or charges against the same, imposed by the will of Edward S. Handy, Sr., or the acts of E. S. Handy Jr.; that all questions of the validity and amount of said liens or charges and their rights of priority shall be relegated to the fund to be produced by said sale; that ten per cent of the purchase money shall be paid in cash at the time of sale and the balance upon confirmation thereof; that prior to making said sale the assignee shall enter security in the sum of $40,000 to be approved by the court; and that the assignee shall report said sale to the court for confirmation thereof. And after said sale shall have been confirmed the assignee shall have liberty to apply to this court for such further directions in regard to selling the contingent interests of E. S. Handy, Jr., in the real estate of Edward S. Handy, Sr., as the said assignee may be advised is necessary in the premises."

*Error assigned* among others by both appellants was above decree.

*Joseph L. Tull* and *William Drayton*, for appellants, Larned & Haas.—The court below had no authority to stay appellant's execution, order the assignee to sell, and appoint a master, or to enter the decree dated June 15, 1894: Tomlinson's App., 90 Pa. 224; Kleckner's Est., 150 Pa. 519; Pairpoint Mfg. Co. v. Keystone Watch Co., 161 Pa. 17. The claims made by the trustees under the will of E. S. Handy, Sr., are not incumbrances upon the real estate of the assignor, contemplated by the act of Feb. 17, 1876; Patterson's App., 128 Pa. 269; Snider v. Snider, 149 Pa. 362; Light's App., 27 W. N. C. 21; Eichelberger's App., 26 W. N. C. 209; Duval's Est., 146 Pa. 176; Shenk's App., 150 Pa. 521.

The deed of Edward S. Handy, Jr., dated April 29, 1893, to the Philadelphia Trust Company, was void by reason of not having been recorded within thirty days, as required by the act of 1843, and void as against judgment creditors in not being recorded within six months, under act of 1715, and within ninety days, as required by the act of May 19, 1893: Fagen v. Bank, 34 W. N. C. 20; Kern v. Powell, 98 Pa. 253; Chaffees v. Risk, 24 Pa. 432; Davey v. Ruffell, 162 Pa. 443.

The assignee is directed to sell the entire undivided interest

of the assignor in both real and personal estate in a lump sale:
Klopp v. Witmoyer, 43 Pa. 221.

*R. L. Ashhurst, Rowland Evans* with him, for appellants,
the Philadelphia Trust, Safe Deposit & Insurance Co.—The
interest of the executors of E. S. Handy, Sr., in the share of
Edward S. Handy, Jr., was one incapable of being divested by
a sale: Mohler's App., 5 Pa. 419; Dewalt's App., 20 Pa. 237.;
Bear v. Whisler, 7 Watts, 144; Hart v. Homiller, 20 Pa. 248;
Topson v. Sipe, 116 Pa. 588.

The court was in error in reopening the question of the
validity of the claim or debt due the estate of Edward S.
Handy, Sr., and leaving it as an open question to be settled at
the audit after the sale.

If there be a conversion the appellants, Larned & Haas,
acquired no lien by their judgment, and the interest passed to
the assignee in trust for all the creditors: Allison v. Wilson,
13 S. & R. 330; Neely v. Grantham, 58 Pa. 433; Roland v.
Miller, 100 Pa. 50; Jones v. Caldwell, 9 W. N. C. 459.

The act of 1843 refers only to assignments in trust: Chaffees
v. Risk, 24 Pa. 432.

If the sale is to be made, a lumping sale is the only feasible
or possible one.

*John G. Johnson,* for appellee.—Where a testator makes a
general residuary disposition of his whole estate, blending the
personalty and realty together in one fund, the real estate is
constructively charged with the payment of charges and leg-
acies: 3 Brewster's Practice, 4648; Davis's App., 83 Pa. 348;
Markley's Est., 148 Pa. 538.

The present charges do not stand in the title so as to require
the court to administer the fund by investing it so that annual
payments may be made, but are debts or certain sums, like leg-
acies or valuations, to be paid upon receiving land.

In Dean v. Winton, 150 Pa. 227, upon a partition where
shares of children were to be secured by mortgages, it was held
that these charges did not stand in the title and were not estates.

The interest of a widow in land has always been treated as
an estate, whether it be in a form of a mortgage, a judgment,
or merely a charge in the will: Luther v. Wagner, 107 Pa. 343;
Topson v. Sipe, 116 Pa. 588.

The courts seem to have made a distinction in favor of charges for the purpose of raising annual sums for widows and children which does not affect legacies, debts, or other charges in wills, which can be reduced to a certainty as to amount: Hiester v. Green, 48 Pa. 101; Strauss's App., 49 Pa. 353; Pryer v. Mark, 129 Pa. 529; Dean v. Winton, 150 Pa. 227.

Sales may be made expressly subject to charges that would otherwise be discharged, where all parties agree at the time of the sale that the charges are to remain, and the courts will enforce such agreements: Hart v. Homiller, 20 Pa. 248; Hart v. Homiller, 23 Pa. 39.

Where a testator devises land charged with a legacy, a judicial sale of the interest or estate of the devisee discharges the legacy: Barnet v. Washebaugh, 16 S. & R. 410; Lobach's Case, 6 W. 167; Woods's App., 20 W. N. C. 250; Woods v. White, 97 Pa. 222; Pryer v. Mark, 129 Pa. 529; Fishburn's App., 10 W. N. C. 489.

The assignment by Edward S. Handy, Jr., to his father's executors, was in the nature of a pledge of his interest in his father's estate with the executors. The paper is not avoided by the act of May 19, 1893, P. L. 108; Davey v. Ruffell, 162 Pa. 443.

A conveyance directly to the creditor need not be recorded under the act of 1843: Chaffees v. Risk, 24 Pa. 432.

## LARNED'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895:

The appellants are lien creditors, having a judgment in the court of common pleas No. 3 of Philadelphia, by virtue of which they issued execution and levied on the interest of their debtor in certain real estate. This execution was stayed by an order from common pleas No. 4 of Philadelphia, and a sale of the undivided interest of the debtor in the estate of his father Edward S. Handy, Sr., both real and personal, as one whole, was ordered to be made by the debtor's assignee for the benefit of creditors.

I. The jurisdiction of the court of common pleas No. 4 to thus interfere with the process of another co-ordinate court must be found in the act of Feb. 17, 1876, P. L. 4, and it is contended by the appellants that the facts of this case did not

bring it within that act because first there was but one incumbrance against the land, and secondly because the figures show that there was no substantial doubt on the sufficiency of the estate to pay the liens on it. First, the liens claimed were the appellant's judgment, and certain claims by the trustees of the estate of E. S. Handy, Sr., arising under his will, and others arising out of acts of the debtor his son. Handy, Sr., by his will authorized his trustees under certain conditions to make a loan to his son, but subsequently during his lifetime gave his son the sum specified, and other moneys, and it is claimed by appellants that these were advancements not chargeable on the real estate. This contention however cannot be maintained. The moneys given by Handy, Sr., to his son were not advancements but loans, though payable in a specified and restricted way. The testator's words are "to advance by way of loan," and when the son arrived at the stipulated age during his father's lifetime, the father gave him the money, but took his notes for the amount, and by codicils to his will, directed that these notes should bear interest at five per cent, which should be deducted from the income payable to the son from the estate during the widow's life, and at her death the principal should be "deducted" from the share going to the son on final division and distribution. And lastly the share of the son in the entire estate was an undivided interest in the real and personal estate blended, until partition should be made by the trustees. We think the loans made by the father were clearly charged by his will on the whole share left to the son, including the real estate. The other claims of the trustees arising out of the acts of the debtor, Handy, Jr., present a much more doubtful question. The son borrowed from his father fifty shares of stock of the Philadelphia Trust Company, and with the father's consent pledged it as collateral security for a loan on his own notes. In April, 1893, the father's executors redeemed the stock and held the notes as a debt against the son, and on the same day the latter by deed poll assigned all his right, title and interest in his father's estate, to the trustees as security for the amount of all he then owed his father's estate, including the $17,285 paid by the trustees to redeem the stock above mentioned. As this was a pledge by the debtor to his creditor the learned master rightly held that it was not void for failure to

record it within thirty days. So far as the interest pledged is personalty it was a valid and effective assignment. But the other question, whether so far as relates to the interest in real estate (if the latter can be considered as severable at all from the blended interest) it was not postponed to appellant's judgment by the failure to record it until nearly a year later, was not determined by the master, as in his view of the case that question would not arise until distribution. For this reason although it has been urged here by appellant, we do not decide it now, but leave it with the other matters that will require the attention of the master and the court below. These matters will include the question back of much that has been argued here whether E. S. Handy, Jr., had any interest at all in the real estate as such, which could be the subject of lien. As will be noticed more fully hereafter no specific gift is made to him of any part of the estate, real or personal, but only a share in the sum total of the value of both, and it is open to argument that his interest in realty as such will begin only in the event of any realty being set apart to him in the division which the trustees shall make hereafter. That his interest in the estate as a whole is vested and liable for the payment of his debts, as the master held, does not settle the question of its present liability *as land* to the lien of a judgment.

The second ground of objection that the case is not within the act of 1876, because of the absence of any difficulty in determining whether the property can be sold for enough to pay all the incumbrances, may be disposed of briefly. It is true that the appraised value of the personalty and the assessed value of the realty show a small margin in the amount of the debtor's interest over the incumbrances, but these figures are based on present values while the debtor's interest is in remainder after his mother's life estate. This feature of the case introduces an element of uncertainty and therefore of difficulty which the court had a right to consider: Thompson's Appeal, 126 Pa. 467; Pauley's Estate, 149 Pa. 196.

On the first branch of the case therefore we are of opinion that it was within the act of 1876, and the jurisdiction of the court properly attached.

II. But it is further objected that even if the court had jurisdiction it was over the interest of Handy, Jr., in the realty

only, and would not sustain the order to sell the blended interests in both realty and personalty, in one block. It is true that the act of 1876 applies only to real estate. But it is a remedial statute and should be construed in advancement of the remedy. There could be no better illustration of the usefulness of such an act than the present case. The supplementary petition of the assignee shows that the estate of Edward S. Handy, Sr., includes thirty-five houses in the city of Philadelphia, and four tracts of land, amounting to nearly 175 acres, in the rural wards of the city, assessed for taxation at $108,100, besides something over double that amount in personalty. The interest of the debtor which is proposed to be sold, is in this estate as a whole, of blended realty and personalty, and is not only undivided but in remainder after the life estate of his mother and partly contingent on other remainders to his brother and sisters. Moreover, of what the debtor's share shall finally consist as to realty or personalty, is and must remain entirely uncertain and contingent until after the death of the life tenant when the trustees are to make partition and distribution, in their unfettered discretion, so that they make "four equal shares," and until that time there is a power of conversion in the trustees as to a considerable portion of the realty by a sale which would under the will be paramount to any interest of Handy, Jr., or a purchaser of his title in any part of the realty. Nothing could be more utterly vain and speculative than an attempt to fix the value of the debtor's interest in the real estate under such circumstances. He may not have any real estate at all, for as the personalty is more than two thirds of the whole the trustees may allot his entire share in personalty, or on the other hand they may put it all in realty with or without owelty. The one thing in all this maze which is capable of even an approximate estimation is the general value of his interest in his father's estate as a whole, real and personal combined. This is what the court below have ordered to be sold. In so doing they have reached the most just, economical and convenient result as is conclusively shown by the master in his very able report. For doing this, so far as the share may be regarded as realty the act of 1876 is ample warrant, and while that act does not refer to or provide for sales of personalty, yet the supervision of the assignee as to such matters is part of the general jurisdiction

of the court, and there is nothing in the statute to prevent the blending of the exercise of the two jurisdictions in one order, where as here, it is in plain furtherance of the remedy intended.

The only serious objection to this conclusion is that the senior lien creditor may thereby be deprived of his privilege of using his lien as equivalent to money in bidding at the sale. This argument is not without weight, and has been very strenuously urged by appellants. But we do not think it can override the clear equities of the case in other respects. The right itself depends on the act of April 20, 1846, P. L. 411, and is obviously not a right of substance, but of convenience, only, to avoid the necessity of formal payment by the purchaser to the sheriff or into court, of money which the sheriff or court must return to him in settlement of his lien when distribution is made. It arises only in cases of clear prima facie title on the records, to receive the money back. Where this prima facies is disputed the statute provides for the ascertainment of the facts, but where it does not appear clearly on the records the right does not arise at all. In the present case the balance not only of convenience but of the substantial equities is against the creditor's right, and not by any act of the law or which the law can prevent, but by the testator's act in giving his son an undivided remainder in the blended real and personal estate, so that the latter's interest in the realty alone if any he has, is impossible of present ascertainment.

III. It is further objected to the proceedings that the court postponed the consideration of the liens until after the sale. This objection we are obliged to sustain. The learned master was of opinion that the scope of the act of 1876 did not extend to the determination in advance of the amount or priority of liens, but left these as questions of distribution merely. This view, while in accordance with the general practice of our legal system, represents one of its weak points, growing out of inherent difficulties in shaping equitable rights with merely common law instruments. A lien creditor who, endeavoring to protect his claim, has to bid in ignorance or doubt how much if any of the proceeds of the sale will come back to him upon his lien, necessarily has to leave a margin for the uncertainty. His bid is to that extent speculative, and therefore smaller than if based on exact knowledge. It is in the interest of justice to

all parties that public sales should be upon ascertained rights not only as to title but as to the destination of the proceeds. The act of 1876 is a remedial statute passed in aid of this interest. The authority it gives the court having jurisdiction of the assignee, to stay the hands of the sheriff, and of execution creditors proceeding in pursuance of their unquestionable legal rights, is an equitable power to direct the administration of a trust estate for the general benefit of all parties interested, according to their respective rights. In so doing the court is required to marshal the liens in order to see which are to be discharged, and it is a legitimate and convenient, if not strictly a necessary part of this process to ascertain their amounts and priority. Such ascertainment in advance is in furtherance of the purpose of the act to enable assignees "to make advantageous sales of said real estate," and the act without any strain will bear this construction. We are therefore of opinion that the sale should be preceded by an ascertainment of the liens, if any, which will remain, and of those which will be discharged, together with their several amounts and their respective rank or priority.

. The order appealed from is directed to be modified as herein indicated. Costs of this appeal to be paid by the appellees, but to be reimbursed out of the fund produced by the sale.

### PHILADELPHIA TRUST CO.'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895:

By the second codicil to his will Edward S. Handy, Sr., directed that upon the death of his wife his trustees should divide his "estate both real and personal into four equal shares and one equal share shall be held by my said trustees for each one of my said children *upon the trusts and for the same purposes as are set forth in my will, and for no other trust or purpose whatsoever.*" It is claimed by the appellant that this last clause of the sentence establishes a spendthrift trust for the whole share of E. S. Handy, Jr., and puts it all beyond the reach of his creditors. It is necessary therefore to look carefully into the trusts and purposes set forth in the will. So far as concerns the children the provisions of the will are that the residue, being the bulk of the estate, is left in trust to the present appellant, 1, to allow testator's wife to occupy his city and

country residences with the children and after her death to
allow the children to reside in his country house if they desire
to do so without paying rent; 2, to pay one half the net rentals
and income to his wife, and to divide the other half in equal
shares among his four children; 3, upon the death of his wife
to pay one fourth of the net income of his estate to each of his
daughters during her life to her separate use; 4, upon the death
of either daughter to pay three fourths of the principal of her.
share to her issue if any, or in default of issue then to testator's
surviving children, and the other fourth as his said daughter
may direct, etc.; 5, when each of his sons attains the age of
twenty-one to advance him in their discretion with his wife's
consent, twenty thousand dollars; 6, after the death of his wife
to pay each of the sons one half of his share as he shall attain
the age of twenty-five, and half of the rest or one fourth of his
whole share when he attains the age of twenty-eight, and the
remaining fourth to hold on a spendthrift trust for the life of
the son. It is thus seen that the will creates six separate trusts
or duties on the part of the trustees, all of which require the
whole estate except the sums authorized to be loaned to the
sons, to be kept together during the widow's life, and four of
which necessarily extend the duration of the trust as to the
larger part of the estate, during the lives of the four children.
This is evidently the result contemplated by the testator, and
the only provisions made for a separation of the joint estate
and a partition or division of any of the corpus, are after the
death of the widow, upon the death of a daughter or the attain-
ing of the ages of twenty-five and twenty-eight by the sons.
The will was made in 1874, the codicil in 1883, and in the in-
terval both of the sons had come of age, but it does not appear
if the younger had reached twenty-eight or even twenty-five.
Turning now to the codicil, its first and main purpose is mani-
fest at once,—to provide for a division of his estate at an earlier
period than he had contemplated in his will. He revokes the
power to sell his real estate in the city of Philadelphia and
directs the trustees upon the death of his wife to divide his
estate into four equal shares and to hold one share for each
child " upon the trusts and for the same purposes as are set forth
in my will, and for no other trust or purpose whatsoever."
These last words are very significant, they express the inten-

568 HANDY'S ESTATE.   LARNED & HAAS'S APPEAL.

tion to make no new trusts but to continue the old ones.   Some-
thing was necessary to be said on this subject or it would have
been fairly open to inference that the peremptory direction to
divide, without restriction, had done away entirely with the
trusts in the will after the widow's death.   Let us look at what
is left of these untouched by the codicil.   All of them remain
unchanged during the life of the widow.   At her death the sep-
arate use trusts for the daughters, and the direction as to the
devolution of their shares upon their respective deaths, remain,
with the single alteration that the period of division or separa-
tion of the common estate is advanced from the death of the
mother and daughter both, to the death of the mother only.
As to the sons, except the provision for the loan at twenty-one
the trust by the will was to continue for the whole share during
the mother's life and until each should reach twenty-five, then
for one half until he should reach twenty-eight, and then for
one quarter for his life to protect against creditors, anticipation,
etc.   No separation of his share from the common estate was
to be made except as to the above named fractions at the periods
specified.   By the codicil the division of the estate in common
into four shares in severalty is to be made upon the mother's
death, but no change is made in the times of distribution.
Each son under the codicil is to get as he did under the will,
one half at twenty-five, one quarter at twenty-eight, and one
quarter to be held for his life.   The trusts of the will continue
under the codicil for the protection of this part of the testator's
purpose.

It will thus be seen that there was a necessity for the testa-
tor in his codicil to refer to the subject to prevent the implied
revocation of the trusts in the will; that what he expressed was
an intention to preserve those trusts but not to create new ones;
that there were amply sufficient of the trusts expressly created
by the will, left unaffected by the codicil, to satisfy his direction
that the shares of each child should be held upon such trusts;
and that to construe the codicil as effecting an entire change
in his provision for his sons by putting their whole shares under
spendthrift trusts, is not only uncalled for, but would be sub-
versive of his intent not to create any new trusts, expressed in
his direction that the shares were to be held for the same trusts
and purposes as in his will, " and for no other trust or purpose

whatsoever." The learned master and court were therefore right in their construction of the will upon this question.

The matters in the third and fourth assignments of error have been disposed of in Larned's Appeal, opinion filed herewith, to which reference is made without further discussion here.

Appeal dismissed, costs of this court to be paid by appellant.