The Penn Plate Glass Company, Appellant, *v.* W. S. Jones, trading as Campbell-Jones Glass Co., Thomas Mellon, R. B. Mellon and A. W. Mellon, trading as T. Mellon & Sons, R. B. Mellon and W. S. Mitchell.

*Insolvency—Preferences —Antecedent debt—Debtor and creditor—Fraud.*

A creditor may take from an insolvent debtor an assignment of securities and a bill of sale of personal property in payment of an actual debt, although both debtor and creditor know that the effect of the transaction will be to defeat the claims of other creditors.

*Assignment for creditors—Recording act—Partnership.*

An assignment directly to a creditor himself, either in satisfaction or as collateral security for his claim, is not an assignment for the benefit of creditors within the recording feature of the Act of April 17, 1843, P. L. 273, and this rule applies to an assignment to one of several partners in trust for the payment of the partnership debt.

Argued Nov. 15, 1898. Appeal, No. 205, Oct. T., 1898, by plaintiff, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1896, No. 860, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain transfer of property.

From the record it appeared that on October 8, 1896, The Penn Plate Glass Company, plaintiff, a corporation engaged in the manufacture of plate glass, obtained a judgment for $7,604.10, against W. S. Jones who had been shortly prior thereto engaged in business as a glass jobber on Liberty street, Pittsburg, under the name of "Campbell-Jones Glass Co." On the same day plaintiff issued a writ of fieri facias on said judgment at No. 141, November term, 1896, and attempted to seize thereunder a large stock of glass belonging to Jones, which was then in his warehouse on Liberty street. Plaintiff also on that day issued a writ of execution attachment thereon and attached all the property, assets, accounts, etc., of W. S. Jones in the hands of T. Mellon & Sons, who conducted a banking business, R. B. Mellon and W. S. Mitchell, who were members of the firm. T. Mellon & Sons were in possession of the glass at the warehouse under a claim of title, and so the fieri facias was returned by the sheriff "nulla bona." There were

also certain book accounts, inter alia, of Jones in their hands which they also claimed.

The claim of T. Mellon & Sons to the book accounts was based on a certain written assignment made by Jones on September 12, 1896, to W. S. Mitchell in trust for T. Mellon & Sons, as collateral security; they also claimed the stock of glass in Jones's warehouse by virtue of an alleged bill of sale given by Jones on September 23, 1896. These instruments are as follows:

### EXHIBIT " D."

" For value received, I, Will S. Jones, trading under the name and style of the Campbell-Jones Glass Company, with office and ware rooms at 1153 Liberty avenue, Pittsburg, in order to further secure and protect T. Mellon & Sons, bankers, also of Pittsburg, payment of my indebtedness to them now existing or which may hereafter be contracted or incurred, whether the same be absolute in form or contingent, as well as any renewals or extensions thereof, or of any part thereof, do hereby sell, assign and transfer to W. S. Mitchell, and his heirs and assigns, but for the use of them, the said T. Mellon & Sons, all and every of the debts, dues and accounts of what nature soever, owing and payable to me or to the said Campbell-Jones Glass Company now due and payable or which may hereafter mature; a partial list of which said accounts is attached hereto, marked Schedule ' A.' And the receipt of my assignee, the said W. S. Mitchell, in acknowledgment of payment of any of the debts or accounts hereby assigned, shall be a full and proper acquittance thereof.

" Witness my hand and seal this 12th day of September, A. D. 1896.

" CAMPBELL-JONES GLASS CO. [Seal.]<br>
" WILL S. JONES.                [Seal.]

" Attest:

" HENRY A. PHILLIPS."

### EXHIBIT " E."

" PITTSBURG, Pa., September 23, 1896.

" T. MELLON & SONS.

" Bought from Will S. Jones, trading under the name and style of the Campbell-Jones Glass Company:

" All the stock of plate, window, colored and obscured glass and mirrors and other merchandise, stored in the building No. 1153 Liberty avenue, Pittsburg, together with all the warehouse racks, packing cases, lumber, appliances, fixtures, tools, tables, office furniture, stationery and books, and all other contents of said building, together with book accounts and debts due or owing to the said Will S. Jones and the Campbell-Jones Glass Company at the following prices, viz:

| | | | |
|---|---|---:|---:|
| Total merchandise inventoried September 1, 1896, at | | | $16,255 74 |
| Deduct: | | | |
| For estimated overvaluation, | $2,000 00 | | |
| Sales and deliveries since September 1, 1896, | 2,500 00 | | |
| Ten per cent off, | 1,175 57 | $5,675 57 | |
| | | $10,580 17 | |
| Packing cases, lumber, warehouse racks, fixtures, tools, tables and appliances, | | 600 00 | |
| Safes, office furniture, books, stationery, etc., | | 250 50 | |
| Book accounts and debts due or owing to Will S. Jones and the Campbell-Jones Glass Co., | | 975 00 | |
| Leasehold of premises 1153 Liberty street, | | 25 00 | |
| Total, | | $12,430 17 | |

" Received of T. Mellon & Sons twelve thousand four hundred and thirty dollars and thirty cents ($12,437.17), in full payment for above bill of sale of goods, by the application of that amount by them to the payment and cancellation of a like amount of my indebtedness to them, they returning to me the notes or evidences thereof, heretofore bought or discounted by them, as follows, viz:

| | | |
|---|---:|---:|
| Overdrawn bank accounts, | | $ 402 47 |
| Campbell-Jones Glass Company note of August 26, 1896, at 60 days, | $3,000 00 | |
| Less rebate discount, | 16 00 | |
| | | 2,984 00 |
| Amount carried forward, | | $3,386 47 |

|  | Amount brought forward, | $3,386 47 |
|---|---|---|
| Campbell-Jones Glass Company, note of September 3, 1896, at 30 days, | 8,000 00 | |
| Less rebate discount, | 13 32 | |
|  |  | 7,986 68 |
| Credit indorsed upon the back of the Campbell-Jones Glass Company note for $2,049 of September 1, 1896, due October 5, 1896 | | 1,057 02 |
| Total, | | $12,430 17 |

                              " CAMPBELL-JONES GLASS CO.,
                              " WILL S. JONES.

" Attest:
    " CHARLES F. FARREN."

The plaintiff filed this bill to set aside and declare void these instruments on the ground:

1. That both were given to hinder, delay and defraud creditors.

2. That the assignment exhibit " D " constituted a voluntary assignment for the benefit of creditors, and was void for want of recording.

The case was referred to John P. Hunter, Esq., as referee, who took testimony and filed his report finding:

1. That exhibit " D " constituted a voluntary assignment for the benefit of creditors.

2. That the said instruments were not given or received with the intent to hinder, defraud or delay creditors.

The plaintiff filed exceptions to the second finding which were overruled by the court below.

The defendants excepted to the first finding and were sustained, the court in an opinion by KENNEDY, P. J., finding as a matter of law that exhibit " D " was not a voluntary assignment because W. S. Mitchell, the trustee therein, was a member of the firm, the authority of Vallance v. Ins. Co., 42 Pa. 441, which had not been submitted to the referee, being regarded as conclusive.

*Error assigned* was the decree of the court dismissing the bill.

*S. B. Schoyer*, with him *S. Schoyer, Jr.*, for appellant.—Exhibit "D" constituted a voluntary assignment for the benefit of creditors which was void for want of recording, and the fact that Mitchell, the assignee, happened to be a member of the firm for whose benefit the same was made, does not deprive it of that character: Mann v. Wakefield, 179 Pa. 398; Dickson & Co.'s Assigned Est., 166 Pa. 135.

Neither Vallance v. Ins. Co. nor any other case decides that the fact that the trustee named in an instrument which would otherwise be an assignment for creditors under the act of April 17, 1843, happens to be a member of the firm attempted to be preferred thereby, will take such instrument out of the operation of that act.

The Vallance case was not binding on the court below, and does not sustain the position of the appellee, because the alleged decision upon the effect of a partnership was not raised by the questions involved, and it is obiter dictum.

The Vallance case was reviewed by this Court in Wallace v. Wainwright, 87 Pa. 263, and it was there held that it decided nothing more than that a direct assignment to a creditor was not within the act of 1818.

The only conclusion that can be drawn from the facts found by the referee is that T. Mellon & Sons in order to obtain further securities, and without giving any new consideration, by extending Jones's paper and concealing the existence of the judgment note, permitted and aided an insolvent man to obtain credit and merchandise from unsuspecting parties, and then stepped in and secured a conveyance to themselves of his entire property and assets.

If the natural and logical effect of these transactions was to defraud creditors, then the intent is immaterial, or rather, the intent will be necessarily inferred from the nature of the transactions themselves: Blennerhassett v. Sherman, 105 U. S. 100; Montgomery Web Co. v. Dienelt, 133 Pa. 585; Bughman v. Central Bank, 159 Pa. 94.

*J. McF. Carpenter*, for appellees.—If a debt is owing to a firm, payment by the debtor to any one partner extinguishes the claim, each partner being ostensibly the agent of all the rest to get in debts owing by the firm: Lindley on Partnership, *134; Stock-

dale v. Ullery, 37 Pa. 486; Beans v. Bullitt, 57 Pa. 221; Chaffees v. Risk, 24 Pa. 432; Handy's Est., 167 Pa. 552.

Just here we desire to call special attention to the instrument which plaintiff's counsel desire to convert into a technical voluntary assignment. 1. It is given to secure payment of a valid debt. 2. There is no trust to hold for the ultimate benefit of Jones. 3. It is made directly to a member of the firm of which Mitchell is a member. 4. It is not made " in trust," but for the use of T. Mellon & Sons.

The Mellons bought the stock of goods and paid for it by surrendering notes giving credit on a note, etc., just as found by the referee. The following authorities are conclusive as to their right to do this, and leave no room for discussion: Covanhovan v. Hart, 21 Pa. 500; Lockhart v. Stevenson, 61 Pa. 64; Garretson v. Hackenberg, 144 Pa. 113; Werner v. Zierfuss, 162 Pa. 366; Williams v. Rolling Mill Co., 174 Pa. 299.

OPINION BY MR. JUSTICE MITCHELL, January 2, 1899:

This is a bill by an attaching creditor seeking to have a transfer of property from Jones, the principal debtor, to Mellon & Sons, the garnishees, declared void, first as in fraud of creditors, and secondly, as to part of it, as an assignment for the benefit of creditors, not recorded within thirty days.

On the first point the referee found that Jones was indebted to the firm of Mellon & Sons, and was in failing circumstances, but " was endeavoring to defer the inevitable result of his insolvency and liquidation, in the hope that, in some undefined way, he might be able to continue the business, but the bank (Mellon & Sons) recognized that it was not possible for Jones to continue his business, and was endeavoring to put itself in such condition as would best secure the payment of the indebtedness of Jones to it." Mellon & Sons thereupon took an assignment in writing from Jones to themselves directly of certain stocks, etc., as collateral security for his existing and any future indebtedness to them, and on the same day an assignment, also in writing, to defendant W. S. Mitchell for the use of Mellon & Sons, of all the debts, dues and accounts owing to said Jones, trading as the Campbell-Jones Glass Co., as further collateral security for his indebtedness, existing and future. A few days later, by written bill of sale, Mellon & Sons bought of Jones

his entire stock of glass and other merchandise, fixtures, books, book accounts, debts, etc., and paid for them by a credit on his indebtedness duly entered in his account in their books and the surrender to him of certain notes and other evidence of debt. By these transfers the Mellons practically acquired possession of all the available assets of Jones, though the value did not equal the amount of his debt to them. The referee so found, but he also found that "as respects Mellon & Sons they did not enter into any arrangement with Jones or any one else to do this for the purpose of hindering and delaying the creditors, but they procured a transfer of all this property made to themselves, either by way of collateral or by purchase, for the purpose of paying or securing to be paid the indebtedness of Jones to the bank. They knew that Jones was broken, and made haste to acquire all that could be had." He therefore found that there was no fraudulent intent, and no fraud in fact. In this conclusion the court below concurred, and a review of the evidence shows us no ground to question the correctness of this result. What a creditor may do in a bona fide effort to secure payment of his claim, notwithstanding the delays or hindrances he may thereby impose upon other creditors, has been very fully considered in the recent case of Werner v. Zierfuss, 162 Pa. 360. The facts of the present case bring it clearly within the rules there settled, and the law was properly applied to them by the learned referee and the court below.

On the second point, the referee found that the assignment by Jones of all the debts, dues and accounts owing to him to Mitchell for the use of Mellon & Sons was in effect an assignment for the benefit of creditors, and therefore void against plaintiffs for default of being recorded within thirty days. It appeared that Mitchell was a partner in the firm of Mellon & Sons, but the learned referee held that this did not alter the rule applicable to a case where property was transferred to a trustee to be administered for the benefit of creditors, either in general or by preference, which would be void under the act of 1843. The referee did not have the advantage of the citation of Vallance v. Ins. Co., 42 Pa. 441, and the court below on the authority of that case reversed his conclusion on the second point, and held the assignment good. We are now very earnestly pressed to decide that Vallance v. Ins. Co. is in-

applicable to the present case, because it professes to rest on the act of 1818, which is different from the act of 1843, and because what was there said, which is apparently applicable here, was upon a question not raised by the facts, and is therefore obiter dictum.

We are not able, however, to assent to either of these propositions. Vallance v. Ins. Co. arose long after the act of 1843, and, although that act is not specifically referred to in the opinion, it was as applicable in that case as in this. But on the point here involved there is no difference in the statutes. The act of 1843 provides that all assignments by debtors to trustees to pay their debts, to prefer one or more creditors, etc., shall inure to the benefit of all creditors in proportion to their respective demands. This provision was a change of the law as to preferences, as it stood under the act of 1818, and, while sustaining the assignment, avoided its preferential features by giving all creditors an equal standing and proportionate interest under it. Had the assignment by Jones been to a third party for the use of Mellon & Sons, the argument of appellant would have been sound, for under the act of 1843 the preference would have been void but the assignment would have been good, and would have inured to the benefit of all creditors alike. But the point of the present case is that the assignment to Mitchell was not an assignment for the benefit of creditors at all, which is required to be recorded under either act. As to this our decisions are uniform and conclusive.

In Chaffees v. Risk, 24 Pa. 432, it was held that an assignment directly to the creditor himself, either in satisfaction or as collateral security for his claim, is not an assignment for the benefit of creditors within the recording feature of the statute, and this decision has been uniformly followed: Henderson's App., 31 Pa. 502; Claflin v. Maglaughlin, 65 Pa. 492; Handy's Est., 167 Pa. 552, 562. When, therefore, the case of Vallance v. Miners' Ins. Co., 42 Pa. 441, came before this Court, that point was already settled, and is so treated in the opinion, referring to Chaffees v. Risk, and the real question presented was whether an assignment to one partner in trust for the payment of the firm debt was an assignment to the creditor himself. It was so held, and it is noteworthy that such a case was one of the illustrations previously used in the opinion in Chaffees v. Risk in answering

the same argument now presented by appellant, that in the present case Mitchell was a trustee for the other partners. " It seems to be conceded," says Chief Justice LEWIS, " that where the assignment is to one creditor only, for the security of his own debt alone, the act of 1818 does not apply. But it is thought that where there are several assignees they are trustees for each other. If this be so, they are certainly not the kind of trustees for the creditors of the assignor which fall within the true intent and meaning of the act. . . . To adopt the construction contended for would invalidate all assignments to secure partnership debts, because it might be said with equal propriety that partners are trustees for each other." The decision in Vallance v. Ins. Co. was the logical sequence of the same view. The reasoning of STRONG, J., in support of it is not only in the same line, but is in itself sound and convincing, and we should not hesitate to follow it, even if the case were not too long settled an authority to be now disturbed. The learned court below was right in applying the rule to the present case.

Judgment affirmed.