# In re Assigned Estate of James White and Harriet his Wife. Appeal of John D. Brown, Assignee of Peter S. Pool & Son.

*Assignment for creditors—Sale by assignee—Act of February* 17, 1876.

Under the act of February 17, 1876, P. L. 4, relating to sales by assignees for the benefit of creditors. the court to which the application for an order of sale is made has a discretionary power to grant or refuse the order, and when that discretion is exercised and an order is granted it will require very clear and satisfactory proof of either an abuse of discretion or a manifest disregard of the plain rights of execution creditors, under all the evidence, to induce an appellate court to reverse the action of the court below.

An order of the court of common pleas granting to an assignee for creditors permission to sell the assigned estate will not be reversed by the Supreme Court, where it appears that there were fourteen different tracts of land and interests therein, some held by fee simple title and others by equitable title, and not all lying in the same county; that there were a considerable number of mortgages on the properties, some of which would be discharged by a sheriff's sale and others not; that there were a number of judgments, some of which were liens on parts of the properties only, and others upon other parts; and that the discrepancy between the estimated value of the aggregated properties and the amount of the liens was not very great, and was an uncertain quantity which might result in an amount of sales larger than the estimate, and an amount of liens less than was apparent on the records.

Argued Oct. 8, 1896. Appeal, No. 155, Oct. T., 1896, by John D. Brown, assignee of Peter S. Pool & Son, from order of C. P. Westmoreland Co., Aug. T., 1896, No. 234, to sell assigned real estate. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Petition by assignee of creditors to sell real estate. Before DOTY, P. J., and M'CONNELL, J.

The facts appear by the opinion of the Supreme Court.

The court below made the following order:

And now, August 5, 1896, it appearing to the court that on July 3, 1896, the petition of Edward E. Robbins, assignee for the benefit of the creditors of James White and Harriet, his wife,

praying for an order to sell the assigned real estate, was presented and read; and that a rule was granted upon all lien creditors of the assignor, James White, to show cause why the prayer of the petitioner should not be granted, upon the return of which rule a commissioner was appointed to ascertain the liens against the premises assigned, etc., and which report having been made out and filed, and it thereupon appearing that sufficient notice had been given to all lien creditors, and that the assignee had given bond with security, as required by law, the court upon due consideration deems it for the manifest interest of all parties that said real estate be sold, and does hereby order and empower Edward E. Robbins, assignee as aforesaid, to make public or private sale thereof, and upon payment of the purchase money, on confirmation of said sale or sales, to convey the same to the purchaser or purchasers. Said assignee is hereby authorized and empowered to sell said real estate either as a whole or in part, as may be deemed best, and with power to adjourn the sale from time to time until a sale is effected. Notice of the same to be given in accordance with the act of assembly, sale to be held on the premises.

Terms of sale: Ten per cent of the purchase money to be paid in cash upon the day of sale, immediately after the property is knocked down, otherwise the property will again be exposed to sale. Forty per cent to be paid upon confirmation of sale, and the remainder in six months thereafter, with interest. Deferred payments to be secured by judgment bond and mortgage, containing thirty day scire facias default clauses. Report of the action of the assignee in execution of this order to be made to the court, Monday, September 21, 1896. Stay of execution is ordered upon all liens against said real estate that may be divested by the sale hereby authorized, until this order shall be expended or revoked.

*Error assigned* was above order.

*Edward B. McCormick* and *John F. Wentling*, with them *David A. Miller*, for appellant.—We submit that the court in this case was without jurisdiction to grant the order, and in support of this contention we cite: Markel's App., 150 Pa. 519; Betts's Est., 1 Pa. C. C. 587; Trickett on Assignments, 151.

*P. H. Gaither*, with him *H. P. Laird, C. E. Woods, J. B. Keenan, E. E. Robbins* and *J. E. Kunkle*, for appellee, cited, Thompson's App., 126 Pa. 467 ; Pauley's Est., 149 Pa. 196.

OPINION BY MR. JUSTICE GREEN, November 9, 1896 :

It appears by the report of the commissioner in this case that the appraised value of the property for which the order of sale was asked was $69,307.67, while the total amount of the liens affecting the same was $102,623.34. The real estate in question consisted of fourteen different tracts of land and interests therein, thirteen of which were situated in Westmoreland county and one in Washington. The properties were of various kinds consisting of farms, houses and lots in villages, and tracts of coal land, in some of which the assignor owned undivided interests with other persons, and some of which he owned entirely. Some of the properties were held by fee simple title, and others by equitable title only. Among the reasons set forth in the petition for granting the order of sale are the following, " The petitioner further represents that because of the number of properties, the varied character, quality and value thereof, and the undivided interests held as aforesaid, and equitable titles dependent upon final decree, in his judgment a sale thereof by execution on the part of the sheriff would be not only to the disadvantage of the said James White, but would be working a manifest injury to many of his lien creditors." The petitioner also averred that if an order of sale was granted he would be able to sell the several tracts on the premises, on more favorable terms and with the opportunity of making subdivisions of such portions of the lands as were contiguous to villages and towns, and by these means he would be able to make more favorable sales to the advantage of both the assignor and his lien creditors. It is alleged in the appellee's counter statement, and not denied, that all of the numerous creditors of the assignors except this appellant acquiesced in the petition. It also appears that a contest was pending as to the validity of the appellant's judgments, and it is alleged that if that contest terminates favorably to the assignor the amount apparently due on these judgments would be largely diminished. It is also set forth that in one contest already had respecting these judgments a diminution of their amount was effected to the extent of $35,000, and since

that other facts have been discovered tending to establish a further defense to the judgments in Washington county, and that a rule to show cause why they should not be opened had already been obtained.

It is only necessary to refer to these allegations, as tending to show a state of uncertainty as to the amount of the liens, and, consequently, as to the question whether, in the language of the act of 1876, it is "difficult to determine whether the same (the lands) can be sold for enough to pay all the liens." Before granting the order of sale prayed for, the court appointed a commissioner to ascertain the liens affecting the real estate in question, and the extent to which they affect the properties respectively. The commissioner thus appointed subsequently made an extended report, describing the various properties and the very numerous liens affecting them. The result of this report developed a very complicated situation in regard to the character, extent and distribution of the liens among the various properties. There was a considerable number of mortgages, some of which would be discharged by a sheriff's sale and others not, and some of which were paid, either in part, or in whole. Some of the judgments were liens upon parts of the properties only, and others upon other parts, all of which were carefully specified and described.

Upon an examination of the whole record it seems to us that this was a very proper case in which an order of sale to the assignee should be granted, not only in the interest of the assignor but also of all his creditors. A sheriff's sale or sales of such a mass of properties, with such a confused condition of the liens upon them, would almost certainly be attended by disastrous results in the prices obtained, all of which could be probably averted by assignee's sales made with care and deliberation, and at carefully selected times and in limited parcels. In view of the fact that the discrepancy between the estimated value of the aggregated properties, and the amount of the liens is not very great, and is an uncertain quantity, which may result in an amount of sales larger than the estimate, and an amount of liens less than is apparent on the records, we do not think there is anything in the act of 1876 which would deprive the court of its jurisdiction to entertain the petition, and to grant the order. The jurisdiction is not measured by any exact terms

or precise limitations.   The event upon which the power to grant an order of sale arises, is itself an uncertainty.   It is the difficulty of determining whether the real estate of a voluntary assignor for the benefit of creditors, can be sold for money enough to pay all the liens against it.   No one can absolutely decide such a question in advance, and considerable latitude must always be allowed in determining whether to exercise the power.   Moreover there are other reasons for its exercise than the one thus stated, and they appear in the act.   They are found in these recitals, "Whereby the titles made by the assignees are regarded as doubtful, and the assignees are thereby unable to make advantageous sales of said real estate;" and "Where the said court shall deem it for the manifest interest of all parties authorizing and empowering the said assignees to make public sale of said real estate."   These considerations briefly expressed are (1) the doubtful character of the title made by assignees, (2) the consequent difficulty of making advantageous sales, (3) the manifest interest of all parties concerned.   In construing the statute it is essential that all the matters should be regarded.   Having then in view the difficulty of determining whether the lands can be sold for enough to pay off the liens, the doubtful character of the title made by assignees before the act of 1876 was passed, the resulting difficulty of making advantageous sales, and the manifest interest of all the parties concerned in the particular case, it must be also considered that the court to which the application for the order of sale is made has a discretionary power to grant or refuse the order.   When that discretion is exercised and an order is granted, it will require very clear and satisfactory proof of either an abuse of discretion, or a manifest disregard of the plain rights of execution creditors, under all the evidence, to induce an appellate court to reverse the action of the court below.   In the present case we not only do not see any reason for such action on our part, but on the contrary we are well convinced that the granting of the order of sale in question was a wise and judicious exercise of the power of the court below.   Instead of proving a loss to any of the lien creditors of the assignor we think a sale made in this way will result far more to the advantage of all than any possible sheriff's sale.

In the case of Pauley's Estate, 149 Pa. 196, we said, "Upon the

facts of the application for the order of sale we think it clearly apparent that the case is one eminently proper for the exercise of the power of the court to grant the order. The act was intended, and it expressly so declares, to apply to cases where the real estate is "incumbered with liens to such an extent as to render it difficult to determine whether the same can be sold for enough to pay all the liens. That was precisely the case here. The liens were somewhat in excess of the appraised value, but the appraised value may not be the real value, and may not be so much as the proceeds of the sale. It is alleged here that the liens are stated excessively in respect that one of them is duplicated in the amount of another. We do not think the difference even in the amount of the appraised value and the aggregate of the liens as most largely stated, is sufficient to relieve the case of the uncertainty which gives the court jurisdiction to grant the order." In that case the property was appraised at $24,144.97, and the amount of the liens as stated was $31,330.75, the excess of liens being nearly thirty per cent greater than the appraised value. In the present case the difference is not much greater than that, taking the lowest estimate of the property and the highest estimate of the liens, while if the highest estimate of the property be assumed and the lowest estimate of liens there is scarcely any difference in the amount. In Thompson's Appeal, 126 Pa. 467, an order of sale granted by the court below was affirmed at bar by this court, the lien creditors having averred in their answer to the assignee's petition, that the lands were appraised at $194,053.33 1/3, and the liens did not exceed the sum of $90,000 and therefore there was no difficulty in determining whether the lands would yield enough to pay all the liens.

Notwithstanding this wide divergence we held that the order of sale was properly granted and refused to interfere. The reasons we have already stated are sufficient to sustain the order granted by the learned court below, and we therefore dismiss the assignment of error.

The decree of the court below is affirmed at the cost of the appellant and the record is remitted for further proceedings.