## McFarland's Estate.

*Sheriff's sale—Execution—Marshaling of liens—Appointment of auditor prior to sale.*

The court of common pleas has no power prior to a sheriff's sale, upon the ex parte petition of a mechanic's lien creditor, and without previous notice to other lien creditors, and without any equitable grounds appearing in the petition, to appoint an auditor "to marshal the liens against the premises, determine which liens, if any, will be discharged by a sale of said premises, and which will remain, also their several amounts and their respective rank or priority." The report of such an auditor is not res ajudicata, and it is immaterial that an attorney for a lien creditor may have been present at one of the hearings before the auditor.

*Mechanic's lien—Assignment—Consideration.*

Where at the time of the assignment of a mechanic's lien, money is paid by the assignee to the assignor, the presumption is, in the absence of evidence, that the payment was in consideration of the assignment, and not as a payment of claim.

*Appeals—Costs—Auditor's report.*

A lien holder whose claim on a fund for distribution would not be reached if costs were disallowed, has no standing to complain of the allowance of costs out of the fund.

Argued Oct. 22, 1900. Appeal, No. 228, Oct. T., 1899, by plaintiff, from order of C. P. Blair Co., June T., 1899, No. 23, dismissing exceptions to auditor's report in In re Estate of Albert McFarland. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to auditor's report.

From the record it appeared that on February 10, 1897, J. T. Robinson presented a petition to the court of common pleas in which he averred as follows:

That on May 31, 1892, John Orr, trustee of Sallie A. Hallowell conveyed to Albert McFarland, inter alia, a certain lot of ground situate on the southeast corner of Clarke and East Third streets, in the borough of Bellwood, said county, said lot fronting sixty-five feet, more or less, on the northeast side of said Clarke street, and extending back therefrom, along the southeast side of said East Third street, 124 feet, more or less, to an alley.

That since the purchase of said lot of ground, as aforesaid, said McFarland has erected thereon a two-story frame weather boarded dwelling house, stable, etc., and in so doing contracted certain debts for work and materials done and furnished therefor, for which mechanics' liens were duly entered in this court against said premises as required by law. That on June 26, 1893, the Peoples' Building & Loan Association, of Altoona, Pa., placed of record against said premises a mortgage for $600, and again in December 22, 1893, another mortgage on same for $1,600. That certain judgments have also been entered against said McFarland, both before and since the entry of the last named mortgage. That the work of erecting said dwelling house was begun some time prior to the date of record of said first mentioned mortgage, but none of the mechanics' liens were filed until after said date. That on June 26, 1893, said work of erection and construction had already been begun on said premises, and materials had been delivered on said premises, to be used in said building. That by reason of these facts the first mentioned mortgage in favor of the Peoples' Building & Loan Association is not a first mortgage, as might be inferred by an inspection of the records of said county.

That your petitioner filed a mechanic's lien for work and materials done and furnished for said building during the course of its erection and completion to No. 2965, mechanic's lien, docket "E," amounting to $13.33, interest and costs, no part of which has been paid. That as the proceeds of a sale of said property would first be applied to the mechanics' liens against same, and as there would be doubt in the minds of bidders as to whether or not said mortgage would be discharged by a sale of the premises, your petitioner prays that an auditor, or other suitable person, be appointed by the court to marshal the liens against said premises, in advance of sale thereof, in order to see which are to be discharged and which will remain, together with their several amounts and their respective rank or priority.

The decree on the petition was as follows:

Now, February 10, 1897, within petition read and, after due consideration by the court, Clyde E. Brown, Esq., is hereby appointed auditor to marshal the liens against the premises within mentioned, determine which liens, if any, will be discharged by

a sale of said premises, and which will remain, also their several amounts and their respective rank of priority.

The auditor filed a report in which he set forth the order of the liens.

On June 16, 1899, the premises described in the petition were sold by the sheriff, and G. H. G. Stover, Esq., was appointed auditor to make distribution of the proceeds of the sheriff's sale.

Exceptions to Mr. Stover's report were overruled by the court, BELL, P. J., filing the following opinion:

At the time of the filing of the report of the auditor to ascertain and marshal liens, the following valid liens were prior to the Cornmesser judgment, to wit:

| | |
|---|---|
| Mechanic's lien of the Robinson Co., . . $ 13.33 | |
| Mechanic's lien of John H. Markle, . . 52.25 | |
| Mechanic's lien of Thomas P. Gehr for use of | |
| Peoples' B. & L. Ass'n . . . . 1,179.03 | |
| Mortgage, Peoples' B. & L. Ass'n . . 600.00 | |

The property sold for $1,000, plus $600. Peoples' Building and Loan Association mortgage not divested, or in the aggregate, $1,600.

There is no allegation that the sale was not for a fair price, or that a higher price would have been bid in the interest of the Cornmesser judgment. As there were in the aggregate, disregarding interest and costs, some $1,850 of valid prior liens ahead of the Cornmesser judgment, it requires considerable legal legerdemain to figure out a theory whereby, with any show of equity, the Cornmesser judgment ought to receive any share in the proceeds of said sale.

But it is claimed by counsel for the Cornmesser judgment that the mechanic's lien, Gehr for use of the Peoples' Building & Loan Association, lost its priority of lien because it was not proven before the auditor to marshal liens.

The authority to appoint an auditor to marshal liens rests on no very sure foundation. There is no legislation allowing such auditor to be appointed. In one or two instances the Supreme Court has sanctioned the appointment of an auditor to marshal liens, in advance of a judicial sale, but these were

cases, I think, of assigned estates where there were a number of properties, and confusion thereby occasioned as to the order of the several liens. No case was cited wherein the Supreme Court sanctioned the appointment of such an auditor where there was—as in the present case—but one property.

It is doubtful, then, whether the report of the auditor to marshal liens is entitled to any weight as res adjudicata.

But, assume that the court had full authority to appoint such auditor, still his powers were equitable merely, and such appointment was made to ascertain, if possible, the truth, not as a means whereby one creditor could obtain snap judgment over another.

Assuming, then, that this court had power to so appoint such auditor, what would be disclosed to the plaintiff in the Cornmesser judgment by the report, as we find it, of said auditor?

1. That the main purpose of the appointment was to ascertain whether mortgages or mechanics' liens had priority.

2. That such mechanics' liens had priority over the mortgages.

3. That there was a mechanic's lien duly entered,—Gehr for use of Peoples' Building and Loan Association, $1,179.03.

4. That the inquiry of the auditor had been diverted away from a search after the truth by an objection of the counsel, at whose instance the auditor was appointed, to the allowance of any merchanic's lien, unless it was then and there proved.

Surely the last mentioned fact would be sufficient warning to any one that the inquiry was not after the truth, but that the auditor's report was to be used as a means of taking snap judgment against some one. And the attention of any one desiring information would have been called to these facts, because the auditor sets out no schedule of liens, but only refers to the certified statement of same from the prothonotary which is attached to the end of his report.

Would not the inquiry at once arise in the mind of one seeking information from such report: If the Robinson and Markle mechanics' liens are the first liens, why has not the Gehr mechanic's lien the same priority? And by what right did the auditor content himself with simply reporting such liens as were proven before him, when liens of similar grade stared him in the

face on the record? See the inequity of the rule contended for by counsel for the Cornmesser judgment. Robinson asks the court to appoint an auditor to determine whether his mechanic's lien has priority over a mortgage. At the sitting of the auditor, Robinson proves his lien and shows that it has priority over the mortgage. Then his counsel says: "I object to any investigation by the auditor, except as to such liens as are now and here proven."

The auditor, instead of investigating, as he ought to have done, makes a report which, is is claimed, defeats the priority of the Gehr mechanic's lien. An investigation at the instance of Robinson, to give him light as to his $16.00 mechanic's lien, is perverted so as to destroy another equally meritorious lien, $1,100, in amount. Certainly this is not equity, but inequity. No court would sanction such a result unless driven to do so by legislative enactment, or binding authority of a higher court. As we have stated, there is no such legislation, or such binding precedent. Hence, we feel justified in imputing to the plaintiff in the Cornmesser judgment the knowledge which cropped out in the auditor's report. There was sufficient warning contained in said report that there was a Gehr mechanic's lien, and no good reason why it should be postponed in payment. In fact, the auditor only inferentially attempts to postpone it. There is no element of estoppel in the case. Cornmesser did nothing, in no wise changed his position for the worse. To allow him to profit by the report of the auditor to marshal the liens would be giving him a benefit in the nature of a windfall. It would be pure good luck so far as he is concerned.

*Error assigned* was in overruling exceptions to auditor's report.

*George M. Meyers*, for appellant.—The court had power to appoint an auditor in advance of sale: Hilliard v. Tustin, 172 Pa. 354; Frauenthal's App., 100 Pa. 296 ; Larned & Haas's App., 167 Pa. 552; White's Est., 178 Pa. 282; Evans v. Goodwin, 132 Pa. 136 ; Adams's App., 113 Pa. 449; Fidelity Title & Trust Co. v. Weitzel, 152 Pa. 498; Drake v. Lacoe, 157 Pa. 17; Searight v. Carlisle Deposit Bank, 162 Pa. 504; Williams v. Concord Congregational Church, 193 Pa. 126.

The Brown report is res judicata: Baird v. Campbell, 4 W. & S. 191; Towers v. Tuscarora Academy, 8 Pa. 297; Safe Deposit & Trust Co. v. Columbia Iron & Steel Co., 176 Pa. 548; Norris's App., 30 Pa. 122; McCay's App., 37 Pa. 125; Gratz v. Lancaster Bank, 17 S. & R. 278; Rauwolf v. Glass, 184 Pa. 240; Bell v. Allegheny Co., 184 Pa. 296.

The records show that the Cornmesser judgment had priority over the Gehr claim on day of sale: Searight's Est., 163 Pa. 227; Indiana County Bank's App., 95 Pa. 501; Wagner's App., 98 Pa. 80; Gring's App., 89 Pa. 337; Douglass's App., 48 Pa. 225; Harner's App., 94 Pa. 494; Burkholder's App., 94 Pa. 525.

*Charles Geesey*, with him *Daniel J. Neff*, for appellee.— Auditor Brown's report is not res judicata: Duchess of Kingston's Case, 2 Smith's Leading Cases, 784; Kilheffer v. Herr, 17 S. & R. 319; Wixom v. Stephens, 17 Mich. 518; Smith v. McNeal, 109 U. S. 426; Dodd v. Una, 40 N. J. Eq. 672; Meltzer v. Doll, 91 N. Y. 365; Warren County School Trustees v. Stocker, 42 N. J. L. 116; Reg. v. Hutchins, L. R. 5 Q. B. Div. 353; Hood v. Hood, 110 Mass. 463; Walling v. Beers, 120 Mass. 548; Durant v. Abendroth, 97 N. Y. 132; White v. Crow, 110 U. S. 183; Luckenbach v. Anderson, 47 Pa. 123.

OPINION BY RICE, P. J., January 22, 1901:

Upon the ex parte application of a mechanic's lien creditor, and without previous notice to other lien creditors, the court appointed an auditor "to marshal the liens against the premises within mentioned, determine which liens, if any, will be discharged by a sale of said premises and which will remain, also their several amounts and their respective rank or priority." The auditor reported that all the liens would be discharged by a judicial sale, that the mechanics' liens of the Robinson Plumbing and Heating Company, and John H. Markle "will be first paid; the mortgage of the Peoples' Building and Loan Association will next be paid, and the other liens against said property will be liquidated in the order in which they appear upon the certificate of the prothonotary, and made part hereof, taking priority according to date of entry." The Gehr me-

chanic's lien was filed after the date of the entry of the Corn-
messer judgment, and according to the report of the auditor,
the latter judgment was given priority. It is to be noted in
this connection that in the petition for the appointment of the
auditor, the validity of the mechanics' liens was not questioned;
on the contrary it was distinctly averred that the mechanics'
liens, evidently referring to all of them, " were duly entered in
this court against said premises." At an adjourned hearing be-
fore the auditor, the counsel for the petitioner interposed this
objection, which, in view of the averments of the petition, was,
to say the least, remarkable : " I object to the allowance of any
mechanic's lien or the establishment thereof as a lien against
said premises, unless the same be duly proven by proper evi-
dence before the auditor as required by law." It does not ap-
pear that the attorney for the owner of the Gehr mechanic's
lien was present at that hearing, or at any hearing when any
question was raised as to the validity of the lien, or as to its
having the same rank as the petitioners' mechanics' liens.
Moreover, the auditor found that by reason of the fact that the
building was commenced prior to the Peoples' Building and
Loan Association mortgage, the mechanics' liens antedated the
lien of the mortgage. Notwithstanding this finding, he post-
poned the Gehr mechanic's lien, not only to the mortgage, but
also to the Cornmesser judgment, which was entered four months
after the mortgage. Upon what ground this conclusion was
based does not appear in his report, nor in the evidence sub-
mitted to him. If he had disallowed the lien altogether, it
might be surmised that it was because of the objection hereto-
fore referred to, but as he did not disallow it, it is impossible to
explain the finding upon that theory, or to sustain it upon any
theory that has been suggested. But, as the counsel for the
appellant well says, the conclusive effect of a former adjudica-
tion cannot be destroyed by showing that it was erroneous,
merely. We do not put our decision of this appeal upon that
ground, as presently will be shown.

The court confirmed the report nisi on February 2, 1898, and
on February 8, 1898, no exceptions having been filed in the
mean time, the prothonotary marked it confirmed absolutely.

A year or more later a levari facias was issued upon the judg-
ment entered upon the Gehr mechanic's lien, and in June, 1899,

the premises were sold at sheriff's sale. This appeal arises out of the distribution of the proceeds. The point to be decided is, whether or not the report of the auditor appointed to marshal liens was conclusive in that distribution upon the question of priority between the Gehr mechanic's lien and the Cornmesser judgment? The learned judge of the court below in a vigorous opinion held that it was not, and in that conclusion we entirely concur.

The doctrine of marshalling grows out of the principle that a party having two funds to satisfy his demand, shall not, by his election, disappoint a party who has only one fund: Bispham's Eq. sec. 340. It is an equitable principle upon which the legal rights of creditors are controlled in order to accomplish an equitable distribution of funds in accordance with the superior equities of different parties entitled to share therein: 2 Bouv. L. Dict. (Rawle) 328. In the absence of a statute conferring it, the power of the court of common pleas, whether sitting in equity, or administering equity according to common-law forms, to marshal liens prior to a sheriff's sale of land is confined to cases where the equity above referred to is involved. Even in such cases the power is rarely exercised, and never ought to be exercised without first obtaining jurisdiction of the persons to be affected by service of a rule or other proper process. There was nothing said or decided in Handy's Estate, Larned and Haas's Appeal, 167 Pa. 552, or in White's Estate, 178 Pa. 280, which is in conflict with the foregoing conclusions. The marshalling of liens in advance of sale was held to be a legitimate and convenient, if not strictly a necessary, part of the proceedings authorized by the Act of February 17, 1876, P. L. 4. "It is in the interest of justice to all parties," said Mr. Justice MITCHELL, "that public sales should be upon ascertained rights not only as to title, but as to the destination of the proceeds. The act of 1876, is a remedial statute passed in aid of this interest. The authority it gives the court having jurisdiction of the assignee, to stay the hands of the sheriff, and of execution creditors proceeding in pursuance of their unquestionable legal rights, is an equitable power to direct the administration of a trust estate for the general benefit of all parties interested, according to their respective rights. In so doing, the court is required to marshal the liens in order to see which are to be

discharged, and it is a legitimate and convenient, if not strictly a necessary part of this process to ascertain their amounts and priority. Such ascertainment in advance is in furtherance of the purpose of the act to enable assignees ' to make advantageous sales of said real estate,' and the act without any strain will bear this construction." No further remarks are necessary to show the inapplicability of these cases to the present. No statutory authority for this proceeding can be shown, nor was it necessary in order to protect equitable rights. No equity whatever was alleged in the petition, and none was disclosed in the auditor's report. We hold, therefore, that the appointment of the auditor, with such powers as were specified in the order upon the mere ex parte petition of a lien creditor alleging no facts which would give the court jurisdiction to adjudicate the questions of priority of lien, the effect upon valid liens of a judicial sale, that might never be made, and the amount due to the lien holders, was without authority of law. The assignee of the Gehr mechanic's lien was not bound to submit either of these questions to the determination of the auditor or to the court at that time.

But it is said that the attorney for the assignee appeared before the auditor. We are not prepared to say that the mere fact, and this is all that is asserted in the auditor's report, that the attorney was present at the first hearing gave the court jurisdiction to decree that in the event of a judicial sale of the premises being made at any time in the future, no matter how remote, the legal order of distribution as fixed by the facts existing at that time should be departed from. It required the passage of an act of assembly to give the court jurisdiction to distribute the proceeds of a sheriff's sale not paid into court: Hoch's Appeal, 72 Pa. 53, and cases there cited. In view of what was said and decided in that case, it would seem that the mere presence at one of the hearings before the auditor of an attorney of the lien creditor would not of itself give the court jurisdiction to decree distribution of a fund that might never come into existence. It is unnecessary, however, to discuss the effect of that act of the attorney further, for the court made no such decree as that above suggested. The mere pro forma confirmation of the auditor's report was not effective to postpone or advance liens (see Henderson & Co. v. Stryker, 164

Pa. 170, 177) nor to bind the sheriff, or the court to make distribution in accordance with the auditor's report, if at the time of the sheriff's sale made a year and a half later, the conditions were changed. This was the case here. At the time of the sheriff's sale the two mechanics' liens given precedence in the auditor's report had been paid and satisfied of record, and according to the contention of all the parties, the lien of the Peoples' Building and Loan Association mortgage was not divested by the sale. The conditions being changed, the report of the auditor could not control in part and be set aside in part in the distribution of the fund.

A strained construction is put on the seventh finding of the auditor appointed to make distribution, which is wholly unwarranted, especially when it is read in connection with his other findings. In any view that may be taken of the case, the court was clearly right in holding that the Gehr mechanic's lien had priority over the Cornmesser judgment. To hold otherwise would have worked gross injustice, and, moreover, would have been a plain misapplication of the principles of res judicata.

In the absence of evidence to show the contrary, the presumption is that the payment to Thos. P. Gehr by the Peoples' Building & Loan Association at the time he assigned to the latter the mechanic's lien, was made in consideration of the assignment and not as a payment of the claim. There is no evidence from which the contrary can be reasonably inferred.

Whether right or wrong, the allowance of the costs of the first audit out of the fund did not affect the result, so far as the appellant is concerned. He would not have been reached in the distribution even if they had been disallowed.

The decree is affirmed and the appeal dismissed at the costs of the appellant.